**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, <br><br> *Plaintiffs*, <br><br>　　　v. <br><br> DEPARTMENT OF JUSTICE, including its component the OFFICE OF THE ATTORNEY GENRAL, <br><br> *Defendant*. | Case No: 1:26-cv-2749 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking to compel the immediate release of communications between the Office of the Attorney General ("OAG"), a component of the Department of Justice ("DOJ") (collectively "Defendant"), and State Attorneys General about States' applications to the United States Attorney General ("Attorney General") for certification of the States' capital counsel mechanisms for indigent prisoners under 28 U.S.C. § 2265 and 28 C.F.R. Part 26.

2. Upon certification, a State may avail itself of Congress's *quid pro quo* arrangement under Chapter 154 of Title 28, which allows a State to secure fast-track litigation of habeas petitions in capital cases in return for demonstrating that the State provides a system of adequate representation in state post-conviction cases. Specifically, *if* a State meets § 2265's requirements to guarantee death-sentenced indigent defendants the timely appointment and adequate compensation of competent post-conviction counsel and reasonable litigation expenses, *then* the

State can claim the benefit of special fast-track procedures that greatly shorten the statute of limitations for federal habeas petitions, significantly expedite the federal habeas proceedings, and sharply curtail the scope of federal habeas review of state judgments. *See* 28 U.S.C. § 2265.

3. The records sought are a matter of grave public concern. The U.S. Attorney General purports to be a disinterested and neutral decisionmaker for these state applications. Yet, under § 2265, the Nation's highest prosecutor—the Attorney General—is deciding the quality of the defense counsel for individuals challenging their death sentences. The Attorney General and her officers have engaged in conduct that indicates an unconstitutional bias towards supporting State Attorneys General's efforts to seek certification and swiftly implement executions. The unfairness is stark and concrete.

4. As detailed below, the Attorney General and her officers have made repeated statements in support of expanding the use of the death penalty and state certification under Chapter 154. They have encouraged States to apply for certification for fast-track habeas review. They have engaged in *ex parte* communications with States with pending applications under § 2265(a) or with States which are preparing applications. Removing any façade of neutrality or balance, two weeks ago, the Attorney General published notice of a new proposed rule for determining State certification applications that allows for determination based only on submissions from States and eliminates public comment, including from those most harmed by the Attorney General's certification of a State—state prisoners sentenced to death and their counsel.

5. The requested records, together with these actions by the Attorney General and other executive officials, will shed light on the U.S. Attorney General's partiality when considering States' certification decisions. The records sought through this request will help the

public understand the extent to which the U.S. Attorney General is making biased decisions with life-or-death consequences.

6. Plaintiffs the American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "ACLU" or "Plaintiffs"), submitted a FOIA request to DOJ on August 8, 2025, seeking release of records concerning the OAG's communications with state Attorneys General regarding State applications under 28 U.S.C. § 2265, and other related records. *See* Exhibit A ("FOIA Request"). To date, DOJ has not processed the request nor released any responsive records, notwithstanding FOIA's requirement that agencies make a determination with respect to requests within the statutory timeframes.

7. Because the public deserves to know the extent of the Attorney General and OAG's involvement in encouraging and advising on States' certification applications, Plaintiffs now ask the Court for an injunction requiring Defendant to process their FOIA request and immediately release responsive records, and other relief as appropriate.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(b). This Court has jurisdiction to grant declaratory, injunctive, and further necessary relief pursuant to 28 U.S.C. §§ 2201-2202.

9. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency,  Plaintiffs' principal places of business are in New York, New York, within this district, and no real property is involved in this action.

**PARTIES**

10. Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan 26 U.S.C. § 501(c)(4) organization, incorporated in the District of Columbia and with its principal place of business in New York, New York. The ACLU's mission is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. The ACLU is also committed to principles of transparency and accountability in government and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. The ACLU has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials, to the public at no cost. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

11. Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State, and its principal place of business is in New York City.

12. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation together are referred to as the "ACLU."

13. Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 702. The Office of the Attorney General, from which Plaintiffs requested records, is a component of DOJ.

4

**STATUTORY AND LEGAL FRAMEWORK**

14. "The Freedom of Information Act was enacted to facilitate public access to government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)). Its basic purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and hold the governors accountable to the governed." *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Consistent with this purpose, the FOIA statute creates a "strong presumption in favor of disclosure [and] places the burden on the agency to justify the withholding of any requested documents." *Ray*, 502 U.S. at 173.

15. FOIA requires federal agencies to disclose records in response to a request by a member of the public, unless those records fall within one of nine narrow statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), (b)(1)-(9). FOIA also requires an agency to make an adequate search for responsive records that is "reasonably calculated to discover the requested documents." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. Sec. and Exchange Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

16. An agency must make a "determination" as to a FOIA request within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances," an agency may extend this deadline generally by no more than ten working days, but it must provide "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B); 28 C.F.R. §16.5(c). At a minimum, a "determination" must "indicate within the relevant time period the scope of the documents [the agency] will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) (Kavanaugh,

J.); *see also Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp.3d 810, 815 (S.D.N.Y. 2017).

17. If the agency fails to comply with a request within the statutory time period, a FOIA requester is deemed to have exhausted its administrative remedies and can proceeding directly to the district court, where the agency must show "exceptional circumstances" justifying its untimeliness and due diligence in remedying the violation. 5 U.S.C. § 552(a)(6)(C). Per the FOIA statute, "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section . . . ." 5 U.S.C. § 552(a)(6)(C)(ii).

18. FOIA also permits requesters to ask for expedited processing of their request for records if they can demonstrate a compelling need. 5 U.S.C. §552(a)(6)(E)(i). The term "compelling need" applies to requesters who are primarily engaged in disseminating information and possess the urgency to inform the public concerning actual or alleged Federal government activity. 5 U.S.C. § 552(a)(6)(E)(v)(II).

19. A district court has jurisdiction to review an agency's denial of a request for expedited processing, 5 U.S.C. § 552(a)(6)(E)(iii), enjoin the agency from withholding records and order production of records that are subject to disclosure. 5 U.S.C. § 552(a)(4)(B).

### FACTS

20. Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Public Law 104-132, section 107, 110 Stat. 1214, 1221-1226 (1996), established a *quid pro quo* arrangement: a State provides indigent defendants sentenced to death with a mechanism for competent post-conviction counsel and adequate litigation expenses in exchange for receiving the benefit of special expedited and narrowed federal habeas review by Article III courts.

6

21. To qualify for the fast-track procedures for federal habeas review in Chapter 154, a State must meet the requirements for an adequate post-conviction counsel mechanism in capital cases. 28 U.S.C. § 2265.

22. Originally, under AEDPA, federal courts conducting habeas reviews had the duty of deciding whether a State was eligible for the expedited procedures by having met Chapter 154's requirements. Pub. L. No. 104-132, § 107(a), 110 Stat. 1214. Since 1996, no court has found that a State was entitled to apply Chapter 154's fast-track procedures against a specific individual in a federal habeas review.

23. In 2006, members of Congress expressed frustration over judicial determinations that States did not meet Chapter 154's requirements. *See* 152 Cong. Rec. 2441, 2445-46 (2006) (remarks of Sen. Kyl); 151 Cong. Rec. E2640 (daily ed. Dec. 22, 2005) (extension of remarks of Rep. Flake).

24. Congress then transferred decision-making authority from Article III courts in federal habeas review to the U.S. Attorney General and authorized the Attorney General under 28 U.S.C. § 2265(a) to "certify" that a State satisfies Chapter 154. *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 507(c)(1) (2006).

25. Between 2006 and 2024, only two States applied for certification, Arizona and Texas. On January 17, 2025, the U.S. Attorney General denied Arizona's application for certification, having withdrawn a prior determination that Arizona did qualify. Texas's application, originally dated March 11, 2013, remains pending.

26. On January 20, 2025, President Trump issued Executive Order 14164, "Restoring the Death Penalty and Protecting Public Safety," seeking to expand the use of the death penalty in the United States. *See* 90 Fed. Reg. 8463 (Jan. 30, 2025) ("Executive Order"). Among other

things, section 4(b) of the Executive Order directed the Attorney General "to take all appropriate action to approve or deny any pending request for certification made by any State under 28 U.S.C. § 2265." *See id*. at 8464.

27. On February 5, 2025, the U.S. Attorney General issued a memorandum to, *inter alia*, "assist states in prosecuting capital crimes and implementing death sentences." *See* U.S. Dept. of Justice, Attorney General's Memorandum on Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions (Feb. 5, 2025), at 4.[1] Consistent with Executive Order 14164, the Attorney General directed OLP to "promptly address states' pending requests for certification pursuant to 28 U.S.C. § 2265." *See id*.

28. On May 15, 2025, former Assistant Attorney General Aaron Reitz, OLP, sent a letter to State Attorneys General inviting their applications under 28 U.S.C. § 2265 and reminding them that OLP "is ready to assist" with their certification applications.

29. Further, disclosures from state public records requests show that federal officials in DOJ have engaged in *ex parte* communications with officials in State Attorney General's Offices to encourage States to submit applications, offer assistance with their preparation, and provide support for pending applications. For example, correspondence on an informal messaging platform between DOJ's Office of Legal Policy ("OLP")[2] Senior Counsel Alida Kass and the Principal Deputy Solicitor General at the Attorney General's Office of Texas, William Cole, shows OLP encouraging Texas to submit additional information for its pending application that was requested by DOJ, and expressly offering OLP's assistance.

---

[1] https://www.justice.gov/ag/media/1388561/dl?inline.

[2] OLP is the "primary policy advisor to the Attorney General." *See* https://www.justice.gov/olp.

30. Most recently, on March 16, 2026, the Attorney General published notice of a proposed new rule for determining State certification applications. Certification Process for State Capital Counsel Systems, 91 Fed. Reg. 12525 (proposed March 16, 2026) (to be codified at 28 C.F.R. pt. 26). The Attorney General's proposed rule undertakes to create an entirely *ex parte* certification process, without any opportunity for habeas petitioners, their attorneys, or other interested members of the public to comment on or oppose a State's assertion that it has established an adequate post-conviction counsel mechanism. *Id*. The public comment period on the proposed rule ends on May 15, 2026. *Id*. at 12525.

31. Currently, seven State applications for certification are pending: Texas (initially submitted on March 11, 2013 and supplemented on December 18, 2017); Tennessee (submitted on June 6, 2025); Alabama (submitted on April 24, 2025); Mississippi (submitted on October 6, 2025); Ohio (submitted on November 6, 2025); Florida (submitted on December 16, 2025); and Oklahoma (submitted on February 25, 2026). The application for Texas was last open for public comment on December 27, 2017, and applications for Tennessee and Alabama were published for public comment on August 7, 2025. The remaining four applications were listed on the website of the Office of Legal Policy on March 25, 2026, but have not been published in the Federal Register.[3]

**The FOIA Request to DOJ**

32. On August 8, 2025, Plaintiffs submitted a FOIA request to Defendant (Exhibit A) seeking records created from January 20, 2025, to the present, falling within the following categories:

---

[3] *See* Office of Legal Policy | Pending Requests & Final Decisions, *see* https://perma.cc/37T9-5YRE.

a.  Any communications between employees or agents of OAG and

employees or agents of any State Office of the Attorney General regarding

the process for a request for certification under 28 U.S.C. § 2265

("certification process");

b.  Any communications between OAG and a State OAG regarding a pending

request or potential request by any State for certification for expedited and

limited federal habeas review in capital cases pursuant to § 2265

("certification request");

c.  Any communications between OAG and any other officials or employees

of any State other than those in the State OAG regarding the certification

process or a certification request, including but not limited to the Office of

the Governor ("other certification communications"); and

d.  Any internal OAG memoranda and communications regarding an existing

or possible certification request from any State, as well as appointment

calendars reflecting the times and dates of any meetings where an existing

or possible certification request was discussed (including a complete list of

attendees), as well as phone or virtual meeting records wherein an existing

or possible certification request was discussed (including a  complete list

of participants), collectively ("internal certification request

communications").

33. Plaintiffs also requested expedited processing of the FOIA Request pursuant to 5

U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(1)(ii) (2018), because the request involves an

"urgency to inform the public about an actual or alleged federal government activity, if made by

10

a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(e)(1)(ii) (2018). *See* Exhibit A at 4.

**DOJ's Response to the FOIA Request**

34. Under the FOIA statute, Defendant is obligated to respond to FOIA requests within 20 working days, 5 U.S.C. § 552(a)(6)(A), making Defendant's response deadline September 8, 2025.

35. By letter dated August 8, 2025, Defendant acknowledged receipt of the FOIA Request, denied the request for expedited processing, and invoked the 10-day extension of time permitted under 5 U.S.C. § 552(a)(6)(B), which lapsed on September 22, 2025. In the same letter, Defendant deferred its decision on the request for a fee waiver.

36. Defendant stated the FOIA Request fell within "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B), because the request required a "search in and/or consultation with another Office." Defendant did not indicate the scope of the documents it would produce or whether it would claim any exemptions with respect to any withheld documents.

37. Defendant noted in its acknowledgement that it was "focusing [the] records search on official correspondence (i.e. category 1) and emails and attachments . . . (category 2)" because "the vast majority of records responsive to FOIA requests consist of category 2 records."

38. On January 29, 2026, Plaintiffs submitted a follow-up letter to Defendant. Plaintiffs clarified that the FOIA Request included written communications via noncorporate messaging applications and proposed an alternative time frame for processing its request — a deadline of February 26, 2026, 106 working days *beyond* the statutory maximum 30 working day response time on September 22, 2026.

11

39. By an email dated January 30, 2026, Defendant responded to Plaintiffs' follow-up letter. Defendant refused to accept Plaintiffs' alternative time frame for a response (February 26, 2026) and provided a "best estimate" response date of March 30, 2028.

40. On March 5, 2026, Plaintiffs submitted a second follow-up letter to Defendant. Plaintiffs offered to modify the scope of their request by narrowing it from communications between any employee or agent of OAG, including former Attorney General Pam Bondi, to communications between any employee or agent of only OLP, including former Attorney General Pam Bondi. Plaintiffs, again, proposed an alternative time frame for processing its request — this time a deadline of March 25, 2026, 125 working days *beyond* the statutory maximum 30 working day response time.

41. By email dated March 5, 2026, Defendant responded to Plaintiffs' second follow-up letter. Defendant again failed to accept Plaintiffs' new proposed timeline and asserted that it was not possible to narrow the FOIA Request by focusing initially on records from OLP because OLP was a separate component within DOJ from OAG.

42. On March 6, 2026, the parties discussed Plaintiffs' second follow-up letter by phone. Defendant confirmed that it could not agree to Plaintiffs' proposed timeline of March 25, 2026. Plaintiffs conveyed their intent to maintain the FOIA Request for records from OAG and to submit a second request for records specifically from OLP, which they have since done.

43. By email dated March 24, 2026, Defendant responded to Plaintiffs confirming that it will "continue to search for records in OAG" and updating its estimated response date to May 20, 2027, explaining that the previous estimate of March 30, 2028, inadvertently excluded weekends and holidays.

44. Despite urgent public interest in the involvement of the U.S. Attorney General in encouraging and actively assisting States with preparing the applications for certification under Chapter 154 that will then be decided by the Attorney General, Defendant still has not released any records in response to the FOIA Request.

**CLAIMS FOR RELIEF**

**CLAIM I**
**Violation of 5 U.S.C. § 552**
**Failure to Timely Respond to the Request**

45. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

46. Plaintiffs properly submitted the FOIA Request on August 8, 2025, requesting records within the possession, custody, and control of the Defendant.

47. Defendant was obligated under 5 U.S.C. § 552(a)(6)(A) and (B) to promptly produce records responsive to the FOIA Request.

48. Plaintiffs submitted the FOIA Request on August 8, 2025. Defendant failed to issue a response, including a determination of whether to comply with the request and the reasons therefor, in the time provided under 5 U.S.C. § 522(a)(6)(A)(i) (20 days, excluding Saturdays, Sundays, and legal public holidays) or within the time permitted in certain unusual circumstances pursuant to 5 U.S.C. § 522(a)(6)(B) and 28 C.F.R. § 16.5(c) (10 additional working days).

49. Defendant's failure to disclose all responsive records within the statutory time period violates, at a minimum, 5 U.S.C. § 552(a)(6)(A) and (B), and the corresponding regulations.

**CLAIM II**
**Violation of 5 U.S.C. § 552**
**Failure to Conduct an Adequate Search and to Disclose Responsive Records**

50. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

51. Defendant is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to the FOIA request and to promptly produce those records to Plaintiffs.

52. Upon information and belief, Defendant has not conducted any search for records responsive to the FOIA request. Defendant has not produced any records responsive to the FOIA request. Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendant's failure to search for them.

53. Defendant's failure to conduct a reasonable search and disclosure all records responsive to the FOIA request violates, at a minimum, 5 U.S.C. § 552(a)(3), and the corresponding regulations

**CLAIM III**
**Violation of 5 U.S.C. § 552**
**Improper Withholding of Agency Records**

54. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

55. Under 5 U.S.C. § 552(a)(3)(A), Defendant is obligated to make properly requested records promptly available to a requester. Plaintiffs have a legal right under FOIA to the timely search and release of responsive, non-exempt agency records in response to the FOIA Request.

14

56. Upon information and belief, Defendant currently has possession, custody, or control of the requested records. To date, Defendant has not made any records available to Plaintiffs, nor produced a *Vaughn* index.[4]

57. Defendant's withholding of requested records in its possession that are not exempt from disclosure under 5 U.S.C. § 552(b) violates, at a minimum, 5 U.S.C. § 552(a)(3)(A) and the corresponding regulations.

## CLAIM IV
### Violation of 5 U.S.C. § 552
### Failure to Process Plaintiff's Request Expeditiously and as Soon as Practicable

58. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

59. Plaintiff is primarily engaged in disseminating information to the public.

60. The requested records pertain to the involvement of the U.S. Attorney General in encouraging and actively assisting States with preparing applications for certification under 28 U.S.C. § 2265, which will then be decided by the Attorney General. This is a matter of widespread media and public interest, and the requested records will inform the public of pressing and urgent federal governmental activities, actual or alleged.

61. Defendant's failure to process Plaintiff's FOIA Request expeditiously and as soon as practicable violates, at a minimum, 5 U.S.C. § 552(a)(6)(E), and the corresponding regulations.

---

[4] *Vaughn* indices "describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the records nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862, 870 (D.C. Cir. 2009)). The indices are named after the case *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a)     Assume jurisdiction over this action;

b)     Declare unlawful Defendant's failure to make a determination on the FOIA Request within the statutory time frame, failure to conduct an adequate search for the records requested by Plaintiffs, and failure to disclosure the records requested by Plaintiffs;

c)     Order Defendant to conduct a full, adequate, and expeditious search for the requested records;

d)     Order Defendant to expeditiously process and disclose all responsive, nonexempt records, and enjoin Defendant from improperly withholding the requested records;

e)     Award Plaintiffs costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable statute or regulation; and

f)     Grant such further relief as the Court deems just, equitable, and proper.

Dated: April 2, 2026

                                                     Respectfully submitted,

                                                     */s/* Gitanjali S. Gutierrez

Alex Valdez, N.Y. 568026*                  Gitanjali S. Gutierrez, N.Y. 4183935
Abraham Evans, N.Y. 6273247*           **ACLU FOUNDATION**
**ACLU FOUNDATION**                   201 W. Main St., Ste. 402
125 Broad Street                        Durham, N.C. 27701
18th Floor                             Tel: 919-682-5659
New York,. N.Y. 10004                ggutierrez@aclu.org
Tel: 212-549-2500
AValdez@aclu.org
a.evans@aclu.org

*Pro hac vice application forthcoming.*

*Attorneys for Plaintiffs*

17